IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Sammiel L. White,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin,<br>Acting Commissioner of Social<br>Security,<br><br>    Defendant. | Civil Action No. 2:12-02990-JMC-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

  This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

  The plaintiff, Sammiel L. White, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

  The plaintiff was 34 years old on his alleged disability onset date of May 17, 2009. (R. at 11, 18.) He alleged disability due to borderline intellectual functioning and status post gunshot wound to the abdomen/hip. (R. at 13.) The plaintiff is illiterate and stopped going to school in the tenth grade; he has past relevant work as a landscape and concrete laborer and as a resort/hotel houseman. (R. at 28, 30, 18.)

  The plaintiff protectively filed an application for DIB and SSI on May 27, 2009. (R. at 11.) His applications were denied initially and on reconsideration. (R. at 11.) After a hearing before an Administrative Law Judge (ALJ) on February 25, 2011, the ALJ issued a decision

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

on March 18, 2011, in which he found that the plaintiff was not disabled. (R. at 11-20.) The Appeals Council denied the plaintiff's request for review (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> (2) The claimant has not engaged in substantial gainful activity since May 17, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> (3) The claimant has the following severe impairments: status post gunshot wound to the abdomen/hip, and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).
>
> (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> (7) The claimant was born on October 5, 1974 and was 34 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> (8) The claimant is illiterate and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> (9) Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that

2

>    exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from May 17, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.*; *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling (SSR) 82–61, 1975-1982 Soc. Sec. Rep. Serv. 836 (West 1983). The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 1382c(a)(3)(H)(I). He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing* U.S.C. § 405(g)*; Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically,

4

the plaintiff alleges that the ALJ (1) improperly relied upon the Medical Vocational Guidelines and (2) failed to fully develop the record.

The Court will address each alleged error in turn.

**I.    Medical Vocational Guidelines**

The plaintiff first contends that the ALJ erred in resorting to the Medical Vocational Guidelines ("Grid Rules") at step five of the sequential evaluation process.   Grid Rules, "relieve the [Commissioner] of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461 (1983).  The Grid Rules are utilized at step five of the sequential evaluation in determining whether jobs exist that a claimant can perform, where the claimant's "impairment(s) prevents the performance of his or her vocationally relevant past work."  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00.  If, however, the plaintiff has nonexertional limitations in addition to exertional limitations, the guidelines are not to be treated as conclusive.  *See* 20 C.F.R. § 404.1569; *Roberts v. Schweiker,* 667 F.2d 1143, 1145 (4th Cir.1981); *Pratts v. Chater*, 94 F.3d 34, 39 (2nd Cir. 1996).   Non-exertional impairments include mental impairments, such as affective disorder and borderline intellectual functioning.  *See Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983).

In *Grant v. Schweiker*, 699 F.2d 189 (4th Cir.1983), the Fourth Circuit Court of Appeals held that where a claimant demonstrates the presence of non-exertional impairments, the Commissioner, in order to prevail, must be required to prove by VE testimony that, despite the claimant's combination of non-exertional and exertional impairments, specific jobs exist in the national economy which he or she can perform. The Grids may satisfy the Commissioner's burden of coming forward with evidence as to the availability of jobs the claimant can perform only where the claimant suffers solely from exertional impairments. *Id.* at 192.

5

In *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir.1984), however, the Fourth Circuit found that not every malady of a non-exertional *limitation* rises to the level of a nonexertional *impairment*. The proper inquiry, under *Grant*, is whether a given nonexertional condition affects an individual's residual functional capacity to perform work of which he or she is exertionally capable. If the condition has that effect, it is properly viewed as a "nonexertional impairment," thereby precluding reliance on the Grids to determine a claimant's disability. *See id.*

The plaintiff contends that his non-exertional limitations include borderline intellectual functioning, illiteracy, and use of a colostomy bag. To the extent they are (nonexertional), however, it is not enough to merely identify some. As stated, "the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids.'" *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir.1988). (quoting *Channel v. Heckler*, 747 F.2d 577, 582 n.6 (10th Cir.1984)). Thus, courts look at whether a claimant has nonexertional limitations that erode the claimant's occupational base significantly enough to undermine the utility of the Grids. *See Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir. 1989)*; see also Smalls v. Comm'r of Soc. Sec.*, No. 0:08-cv-211, 2009 WL 691931, at *2, 9-10 (D.S.C. Mar. 12, 2009) (holding that ALJ's reliance on Grids was appropriate, notwithstanding his identification of claimant's deficits in intellectual functioning as severe impairment at step two, where claimant's nonexertional impairments "[did] not result in sufficiently serious functional limitations that restrict his ability to perform work of which he is exertionally capable," i.e., "the full range of medium, unskilled work") (first emphasis supplied; second emphasis in original).

The plaintiff first complains that the ALJ's step two determination, that the plaintiff's borderline intellectual functioning is severe, precludes any later determination at step five that the impairment did not further significantly erode the occupational base. The ALJ did, in fact, identify the plaintiff's borderline intellectual functioning as "severe," at step two. But,

6

while the ALJ concluded, at that initial step, that the plaintiff's borderline intellectual functioning, in combination with his physical impairment, posed more than a minimal limitation on his ability to work (R. at 13), the ALJ also later found, based on substantial evidence, that a restriction to unskilled work appropriately accommodated that limitation (R. at 17, 263-66). In that determination, the ALJ relied on the RFC assessment of a State agency psychologist, Dr. Lisa Varner, who opined that the plaintiff was capable of performing simple tasks for at least two hours at a time; would not require special supervision for single, repetitive tasks; and could attend work regularly and accept supervisory feedback. (R. at 17, 265). Additionally, Dr. Varner translated her specific mental RFC findings into an opinion that "[the plaintiff] appears capable of at least unskilled work." (R. at 261.)

Even still, the plaintiff insists that, if the impairment is severe enough to effect the plaintiff's ability to work, at step two, then it must likewise be severe enough to constitute a non-exertional imparment at step five, such that the Grids may not be relied upon dispositively. The Court disagrees that there is any discrepancy in the two findings.

It is well understood that the plaintiff's burden to show a severe impairment at step two is not an exacting one. Although the regulatory language speaks in terms of "severity," the plaintiff need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28; *see also Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) ("[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."); *Albright v. Commissioner of Social Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999). In short, the step two inquiry "is a *de minimis* screening device to dispose of groundless claims." *McCrea v. Commissioner of Social Sec.*, 370 F.3d 357, 360 (3rd Cir. 2004). In other words, just

because the plaintiff's non-exertional limitation was considered legally "severe" at the early, step-two stage does not mean that it necessarily erodes the occupational base substantially for purpose of the Grid Rules, at step five.

This District has not spoken with uniformity on the matter, however. Some courts have found that the severity determination absolutely precludes the Grid Rules; others have not. *Compare Smalls*, 2009 WL 691931, at *9-*10 (affirming ALJ's reliance on Grids, despite step-two finding of severe mental impairment, where ALJ based RFC finding that claimant could perform unskilled work on assessments of two psychologists, one of whom opined that claimant's nonexertional impairments resulted in only mild functional limitations) *with Phillips v. Astrue*, 2012 WL 3765184, at *3-4 (D.S.C. June 11, 2012) (holding that ALJ improperly relied on Grids where he found that claimant suffered from severe impairment of depression, had moderate difficulties in concentration, persistence, or pace, and was "limited to simple, repetitive, routine tasks with limited social interaction"); *Townsend v. Astrue*, 2011 WL 4055402, at *4 (D.S.C. September 12, 2011); *Cain v. Astrue*, 2009 WL 3698112, at *4 (holding that ALJ's step-two finding of severe impairments and identification of mild to moderate mental limitations precluded reliance on Grids).

The undersigned would not favor any absolute rule – that a severity determination at step two regarding a non-exertional limitation unequivocally precludes reliance on the Grids. In the absence of Fourth Circuit instruction and in light of this District's split, a more situational approach that accounts for the actual residual functional capacity effects of any non-exertional impairment seems more sensible than a rote extension of the screening determination of step two. The Court need not resort to it, but it's worth noting that other circuit courts of appeal agree that the severity determination at step two is not dispositive. *See Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007); *see also Ortiz v. Sec'y of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989) ("If a non-strength impairment, even though considered significant, has the effect only of reducing that occupational base

marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability."). The Court is not persuaded that the plaintiff's argument in this regard solves it.

Similarly, the plaintiff has also alleged that the ALJ's conclusion, at step three, that the plaintiff suffers moderate difficulties in concentration, persistence or pace (R. at 15), prohibits any subsequent determination that his non-exertional limitation is yet still too insignificant to erode the occupational base of sedentary work. Again, this District has spoken with some inconsistency. A number of decisions have expressly found that such a determination at step three prohibits reliance on the grids where others have not. *Compare Phillips*, 2012 WL 3765184, at *4 (finding that mild to moderate difficulties with activities of daily living, social functioning, or concentration, persistence or pace "would obviously affect the occupational base for unskilled work, precluding reliance on the Grids to direct a finding of not disabled"); *see also Townsend*, 2011 WL 4055402, at *4; *Cain*, 2009 WL 3698112, at *4; *Oliver v. Astrue*, 2009 WL 1766007, at *10-*11 (D.S.C. June 22, 2009) *with Haselden v. Astrue*, 2011 WL 2036457, at *3 (D.S.C. May 23, 2011) (adopting in part and modifying in part magistrate's report and recommendation) (holding that a step-three finding of moderate restrictions did not necessarily preclude an ALJ's reliance on the Grids, because ALJs are required to use their more detailed RFC findings, not their step three findings, in conjunction with the Grids); *see also* SSR 96-8p, 1996 WL 374184, at *4 (stating that the findings used to evaluate the severity of mental impairments at steps two and three are not a substitute for the more detailed mental RFC assessment used at step five).

Again, however, any sort of bright-line rule seems improvident. First, the Social Security regulations require that, at step five, the ALJ consider "the claimant's [RFC], age, education, and work experience in conjunction with the [Grids]." 20 C.F.R. Part 404, Subpart P, Appendix 2. By comparison, at step three, this District has concluded that a

9

finding of moderate limitations is only "used to rate the severity of Plaintiff's mental impairment, which is a separate analysis from the ALJ's assessment of the plaintiff's RFC, considered as part of Steps Four and Five of the ALJ's sequential analysis." *Haseldon*, 2011 WL 2036457, at *3. Thus, "the ALJ is required to use his RFC assessment not his Step Three findings in conjunction with the Grids." *Id.*

Moreover, courts have repeatedly held that an RFC limiting a claimant to simple or unskilled work can adequately account for moderate difficulties with concentration, persistence, or pace, as present here. *See Wright v. Astrue*, 2012 WL 6947788, at *14 (D.S.C. Dec. 11, 2012); Sensing v. Astrue, 2012 WL 1016581, at *5-*7 (D.S.C. Mar. 26, 2012); *Reid v. Astrue*, 2012 WL 667164, at *11 (D.S.C. Feb. 8, 2012) (reversing the Commissioner's decision on other grounds); *Pierpaoli v. Astrue*, 2012 WL 265023, at *5 (D.S.C. Jan. 30, 2012); *Lawson v. Astrue*, 2011 WL 4502026, at *13 (D.S.C. July 29, 2011). The ALJ applied Grid Rule 201.23, 20 C.F.R. Part 404, Subpart P, App'x 2, (R. at 18), which assumes unskilled or no prior work experience, thus reasonably accounting for the plaintiff's moderate difficulties with concentration, persistence, or pace.

Accordingly, there are a variety of reasons not to view the ALJ's determination, at step three, as preclusive of application of the Grids, at step five, in this case.

Notwithstanding the Court's rejection of these arguments, the undersigned is still uncomfortable with the circumstances of the ALJ's reliance on the Grid Rules. This discomfort is a mixed bag, so to speak, of the ALJ's failure to explain and, as the plaintiff complains, a thin record.

First, the ALJ performed none of the above analysis or otherwise shared in any of the angst this and other jurisdictions plainly experience when trying to reconcile certain determinations about non-exertional limitations with application of the Grid Rules. This apparent tone deafness to any potential conflict or inconsistency in the sequential process is problematic insofar as it raises doubts about how much thought was actually applied to

use of the Grids. And, since the ALJ did not actually explain his rationale – why the non-exertional limitations were not disqualifying of the Grids – the parties and the Court have been left to guess about it and the law that might apply. Certainly, implicit in his application of the Rules themselves there is a determination that the non-exertional limitations have not further eroded the base of available sedentary work, but the ALJ says nothing direct about it. The ALJ, of course, expressly found that the plaintiff could perform the "full range of sedentary work" (R. at 16, 18) but why the non-exertional impairments do not matter more is not fully plain, in light of his findings at steps two and three.

The defendant, on appeal, has offered some explanation as to why each of the non-exertional impairments offered by the plaintiff had no effect on the occupational base of sedentary work. As mentioned, in reliance on Dr. Varner's notes, the ALJ found that a restriction to unskilled work appropriately accommodated the plaintiff's borderline intellectual functioning. (R. at 17, 263-66). And, as the defendant contends, the plaintiff's illiteracy is already a specifically contemplated element of Grid Rule 201.23, which still recommends "not disabled." *See* 20 C.F.R. Part 404, Subpart P, App'x 2; (R. at 18). Lastly, and with respect to the plaintiff's colostomy bag, the defendant argues that there is no evidence that it caused any functional limitations that would interfere with unskilled, sedentary work. The plaintiff testified that it made him "real sore" (R. at 30), but the defendant contends that this is an insufficient effect, as the regulations do not require that a claimant be able to work pain-free. *See Gross v. Heckler*, 785 F.2d 1163, 1166 ("Pain is not disabling per se, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof.").

But, even were the Court to accept these rationale for each of the alleged impairments, the ALJ did not discuss them in combination. As the plaintiff rhetorically contends, what are the effects of borderline intellectual functioning, illiteracy, *and* a colostomy bag? The Court, in general, liberally and regularly assumes that the ALJ is

11

considering impairments, severe or non-severe, exertional or non-exertional, in combination. But, in this case, where the explanation for reliance on the Grids is already questionably sparse, the Court cannot overlook the lack of consideration of what effect all three non-exertional impairments might have had on the occupational base when considered together. And, if there was any ambiguity about it at all, as the defendant concedes (Def. Brief at 9), a vocational expert was required. See SSR 83-14, 1983 WL 31254, at *6 ("Where the adjudicator does not have a clear understanding of the effects of additional limitations on the job base, the services of a VS will be necessary.") But, the decision is not explained well enough to know if this obligation was implicated. It is sufficient to observe that the ALJ should do more to explain how he viewed the relationship and effect of these non-exertional impairments and why they do or do not clearly erode the base of sedentary work.

All of this is compounded by the age of the record. The plaintiff complains that the ALJ should have done more to develop it. It is undisputed that there were only 25 pages of medical records in the plaintiff's file, at the time of the decision, with the last medical record, dating to September 9, 2009, some 17 months prior to the plaintiff's hearing. (See R. at 223-48.) Additionally, all of the evidence relating to the plaintiff's intellectual functioning level, IQ, and ability to read and write were more than 15 years old. (R. at 216-22.) The plaintiff's file contains no reports of consultative examinations from either physical or psychological consultants. And, the plaintiff emphasizes that, during the hearing, the Administrative Law Judge did not ask the plaintiff or his representative if the plaintiff had been treated by any doctors or had been to a hospital emergency room or as an in-patient. (R. at 25-35.) In the plaintiff's pre-hearing brief, however, he indicated that he received no treatment since September 2009 because he lacked sufficient funds. (R. at 215.)

An ALJ has an affirmative duty to fully and fairly develop the record. 20 C.F.R. § 404.1512(d); *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). Admittedly, the ALJ's

12

obligation to assist claimants in meeting their burden of proof on their disability claims is "somewhat relaxed" when, as is the case here, the claimants are represented by counsel. *Walter v. Astrue*, 2009 WL 2584817, at *2 (D. Md. Aug. 19, 2009); *see also Smith v. Astrue*, 2012 WL 3191296, at *4-*5 (W.D.N.C. July 3, 2012) (distinguishing Fourth Circuit cases involving pro se claimants, with limited education and intellect, who were prejudiced by the lack of counsel at the administrative level). But, "[a]lthough the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record . . . and later fault the ALJ for not performing a more exhaustive investigation." *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008).

The defendant argues that the plaintiff is obligated to build the record and, further, that counsel had ample opportunity to raise concerns about its sufficiency all along. Certainly the undersigned would not want to abet any attempt to by the plaintiff to rely on stale but favorable evidence and then challenge its timeliness and relevance only when a disfavorable decision is rendered. But, the Court does not perceive any gamesmanship. And, it does seem peculiar to make some kind of determination about intellectual functioning on records more than 15 years old. Moreover, precisely because the plaintiff proffered, from the beginning, a credible reason for not seeking treatment over a period of time, it would seem right for the ALJ to assist to make more clear the relevant and recent time frame.

As a momentary detour, the Court would circle back to address one other argument of the defendant with respect to application of the Grid Rules in this case. Namely, the defendant contends that apart from whatever error the ALJ made in that respect it remains incumbent upon the plaintiff to put forward evidence that the result would have been different – that his non-exertional impairments indeed did erode the occupational base of sedentary work. But, precisely for the condition of the record the Court would recommend that the plaintiff be absolved of this typical obligation to prove non-harmless the ALJ's

13

decision. Neither the plaintiff nor the ALJ seemingly had all they needed, either to make the determination in the first instance, or fully argue it now.

The Court would not specifically blame either the ALJ or the plaintiff for the failure to make the record more complete. But, at the intersection of the ALJ's questionable explanation for use of the Grids and a stale record, the Court has sufficient concerns to recommend remand.

The ALJ and the plaintiff should make sure that updated records are made. And, the ALJ should more clearly explain his view of the combined effects of non-exertional impairments on the occupational base of sedentary work.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is, therefore ,RECOMMENDED, for the foregoing reason, that the Commissioner's decision be reversed and remanded to the Commissioner under sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

                                                             s/BRUCE  H. HENDRICKS
                                                             UNITED STATES MAGISTRATE JUDGE

October 31, 2013
Charleston, South Carolina